UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED ILLUMINATING COMPANY,<br>    Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | |
| WHITING-TURNER<br>CONTRACTING CO,<br>    Defendant, Third-Party Plaintiff, | : <br> : <br> : <br> : | 3:18-cv-00327-WWE |
| v. | : <br> : | |
| CHERRY HILL CONSTRUCTION<br>CO., INC., et al.,<br>    Third-Party Defendant, Fourth-<br>Party Plaintiff, | : <br> : <br> : <br> : <br> : | |
| v. | : <br> : | |
| GEI Consultants, Inc., et al.,<br>    Fourth-Party Defendant. | : <br> : | |

**<u>MEMORANDUM OF DECISION ON FOURTH-PARTY DEFENDANT'S
MOTION TO DISMISS</u>**

Fourth-party defendant GEI Consultants, Inc., ("GEI") has moved to dismiss Count Two of the fourth-party complaint filed by Cherry Hill Construction Co. ("Cherry Hill"). For the following reasons, GEI's motion to dismiss will be granted.

**BACKGROUND**

On June 30, 2010, The United Illuminating Company ("UI") and Whiting-Turner entered into an agreement for the construction of The United Illuminating Central Facility Project located in Orange, Connecticut. The agreement required the construction of an office building, an operations building,

1

and related parking lots and common driveways. Whiting-Turner and Cherry Hill entered into a subcontract agreement pursuant to which Cherry Hill was to perform the site work on the Central Facility.

By Complaint dated February 23, 2018, UI commenced this lawsuit against Whiting-Turner, alleging that UI has encountered significant defects in the construction of the Central Facility.

Whiting-Turner, in turn, filed a third-party complaint against its sub-contractors, including third-party defendant Cherry Hill. Whiting-Turner alleges that If UI's allegations against Whiting-Turner related to site work are proven, Whiting-Turner's liability to UI for incomplete or defective work is a direct and proximate result of Cherry Hill's breaches of the Cherry Hill Subcontract, including Cherry Hill's installation of "substandard fill" and "an inadequate drainage layer" for the parking lots and driveways. Whiting-Turner further alleges that Cherry Hill was in exclusive control of the site work related to the parking lots and driveways relevant to this case.

Cherry Hill subsequently filed a fourth-party complaint against GEI, asserting a claim for common law indemnification. Specifically, Cherry Hill alleges that, during construction, GEI oversaw, inspected, and approved Cherry Hill's site work.

Cherry Hill alleges the services performed by GEI included, or should have included, soil testing of the fill to ensure that it satisfied the project specifications. Cherry Hill contends that if UI proves its allegations concerning the use of substandard fill, GEI failed to identify any such deficiency. Moreover, Cherry Hill

had no knowledge of the negligence or carelessness of GEI, had no reason to anticipate it, and could reasonably rely upon GEI not to be negligent or careless.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Common Law Indemnification**

Indemnity involves a claim for complete reimbursement based on equitable principles. Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 412 (1965). Ordinarily, there is no right of indemnity between tort-feasors. Id. However, in Kaplan, the Supreme Court of Connecticut adopted an implied obligation of indemnity for a tortfeasor whose active negligence is primarily responsible for a plaintiff's injuries where the "out-of-pocket" defendant was merely passively negligent. Smith v. City of New Haven, 258 Conn. 56, 66 (2001).

3

> To assert a claim for indemnification under *Kaplan,* an out-of-pocket defendant must show that: (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the [] resulting injuries []; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent.

Smith, 258 Conn. at 66.

Among other arguments, GEI submits that Cherry Hill has failed to meet the third element for indemnification, in that Cherry Hill has not alleged that GEI was in control over the situation at issue to the exclusion of Cherry Hill.

Cherry Hill acknowledges that the Connecticut Supreme Court defines exclusive control over the situation as exclusive control over the condition that gives rise to the injury. See Skuzinksi v. Bouchard Fuels, Inc., 240 Conn. 694, 706 (1997); Pellecchia v. Connecticut Light and Power Co., 139 Conn. App. 767, 775 (2012). Cherry Hill further admits that the situation at issue in the instant case is defects in the parking lot and common driveways, which include but are not limited to substandard fill, an inadequate stone drainage layer, and an improper asphalt top coat.

Cherry Hill then submits that it has provided "ample" factual allegations to support its allegation that GEI was in control of the instant situation to the exclusion of Cherry Hill. Nevertheless, setting aside allegations that are no more than legal conclusions, Cherry Hill merely alleges that "services performed by GEI included, or should have included, soil testing of the fill to ensure that it

satisfied the project specifications." Fourth-party compl. ¶ 35. Although it denies using substandard fill, Cherry Hill alleges that GEI failed to identify any such deficiency when it tested the soil or when it neglected to test the soil.

Cherry Hill's allegations – that GEI should have tested the soil, or, in the alternative, that GEI failed to detect a deficiency if testing was performed – do not support its assertion that GEI was in control of the situation *to the exclusion of Cherry Hill*. Allegations of a failure to properly review, certify, or supervise, *alone* are not sufficient to state a claim for common law indemnity. See Michael Horton Associates, Inc. v. Calabrese & Kuncas, P.C., 2012 WL 1089964, at n. 4 (Conn. Super. Mar. 8, 2012) ("The fact that the defendants reviewed these 'very plans' does *not* mean that the defendants controlled them or their use to the exclusion of the plaintiff—that is, to the exclusion of the party that actually prepared them.").

Cherry Hill asserts that the facts of this case are akin to those in Satula v. Yale University, 1998 WL 881831 (Conn. Super. Dec. 7, 1998). In Satula, the trial court denied an architect's motion to strike the common law indemnification claims that were brought by a general contractor and subcontractor. In denying the motion to strike, the trial court held:

> In the present case, Stone and Dimeo, as contractors, clearly allege that architect Roth and Moore controlled the design and specifications of the project and that the design and specifications were at all times followed.

Satula, 1998 WL 881831, at *2. Nevertheless, in the instant case, the court finds that Cherry Hill's allegations, concerning soil testing or approval, are

5

more analogous to the situation in Horton, where the indemnity defendant's review of plans was found insufficient to constitute control:

> Unlike the plaintiff in *Torrington Country Club,* or for that matter, the plaintiff in *Satula v. Yale University,* Superior Court, the plaintiff in the present action cannot claim that it was "just following orders." Specifically, the plaintiff here cannot contend that its structural plans were prepared in accordance with the defendants' specifications or at the defendants' direction, and cannot claim that the preparation of the plans was in any sense a ministerial undertaking. To the contrary, the plaintiff here was *the* structural engineering firm engaged to prepare these plans in the first instance, and the defendants are not alleged to have had any input, role or involvement whatsoever in this preparation. Notwithstanding the plaintiff's obligation to fulfill this responsibility in a competent manner, the plaintiff now attempts to allege facts sufficient to support the conclusion that the defendants, by agreeing to review those plans, assumed control over the plans and their use, *to the exclusion of the plaintiff itself*. The plaintiff, however, has failed to provide any authority to justify this assertion, nor any facts to support it.

Horton, 2012 WL 1089964, at *4.

Moreover, the court in Horton concluded:

> Since the complaint, as pled, is devoid of any factual allegations that would support the conclusion that the defendants assumed such exclusive control solely by virtue of their review of the plans at issue, the complaint is legally insufficient in this respect and fails adequately to state a claim for common-law indemnification.

Id. at *5.

Similarly, GEI's alleged determination that the soil satisfied the project specifications is merely an allegation that GEI failed to review Cherry Hill's work. In the instant case, Cherry Hill is alleged to have been *the* site work firm engaged to prepare the building site. Third-party plaintiff Whiting Turner's complaint against Cherry Hill alleges that under the subcontract, Cherry Hill "represents

and warrants that it is an expert in the particular line or lines of work herein contracted to be done and that it is competent to know whether the materials, methods and apparatus specified for this work are sufficient and suitable to secure the results contemplated by the Contract Documents." Moreover, Cherry Hill "warrants its workmanship and materials furnished against any defects, faults of damages." Considering that Cherry Hill's own fourth-party complaint acknowledges that it is a "site development corporation" that "entered into an agreement with Whiting-Turner to provide certain site work in connection with The United Illuminating Central Facility Project," Cherry Hill has not pleaded factual allegations that could reasonably support its assertion that GEI was in control of the situation *to the exclusion of Cherry Hill* and that GEI's negligence *alone* was the immediate cause of the injury. See Skuzinski, 240 Conn. at 697.

**CONCLUSION**

For the foregoing reasons, GEI's motion to dismiss Cherry Hill's claim for common law indemnification is GRANTED.

Dated this 3rd day of June, 2019, at Bridgeport, Connecticut.

                                                  /s/Warren W. Eginton
                                                  WARREN W. EGINTON
                                                  SENIOR UNITED STATES DISTRICT JUDGE