UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED ILLUMINATING COMPANY,<br>    Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | |
| WHITING-TURNER<br>CONTRACTING CO,<br>    Defendant, Third-Party Plaintiff, | : <br> : <br> : <br> : | 3:18-cv-00327-WWE |
| v. | : <br> : | |
| CHERRY HILL CONSTRUCTION<br>CO., INC., et al.,<br>    Third-Party Defendant, Fourth-<br>Party Plaintiff, | : <br> : <br> : <br> : <br> : | |
| v. | : <br> : | |
| INDEPENDENT MATERIALS TESTING<br>LABORATORIES INC., et al.,<br>    Fourth-Party Defendant. | : <br> : <br> : | |

## MEMORANDUM OF DECISION ON FOURTH-PARTY DEFENDANT'S MOTION TO DISMISS

Fourth-party defendant Independent Materials Testing Laboratories Inc. ("IMTL") has moved to dismiss Count Three of the fourth-party complaint filed by Cherry Hill Construction Co. ("Cherry Hill"). For the following reasons, IMTL's motion to dismiss will be granted.

### BACKGROUND

On June 30, 2010, The United Illuminating Company ("UI") and Whiting-Turner entered into an agreement for the construction of The United Illuminating Central Facility Project located in Orange, Connecticut. The agreement required the construction of an office building, an operations building,

1

and related parking lots and common driveways.  Whiting-Turner and Cherry Hill entered into a subcontract agreement pursuant to which Cherry Hill was to perform the site work on the Central Facility.

By Complaint dated February 23, 2018, UI commenced this lawsuit against Whiting-Turner, alleging that UI has encountered significant defects in the construction of the Central Facility.

Whiting-Turner, in turn, filed a third-party complaint against its sub-contractors, including third-party defendant Cherry Hill.  Whiting-Turner alleges that If UI's allegations against Whiting-Turner related to site work are proven, Whiting-Turner's liability to UI for incomplete or defective work is a direct and proximate result of Cherry Hill's breaches of the Cherry Hill Subcontract, including Cherry Hill's installation of "substandard fill" and "an inadequate drainage layer" for the parking lots and driveways.  Whiting-Turner further alleges that Cherry Hill was in exclusive control of the site work related to the parking lots and driveways relevant to this case.

Cherry Hill subsequently filed a fourth-party complaint against Independent Materials Testing Laboratories Inc. ("IMTL") asserting a claim for common law indemnification.  Specifically, Cherry Hill alleges that IMTL oversaw, inspected, and/or approved Cherry Hill's site work.  Cherry Hill alleges that IMTL's services included, or should have included, soil testing of the fill to ensure that it satisfied the project specifications.  Cherry Hill further alleges that If UI proves its allegations concerning the use of substandard fill, IMTL failed to identify any such deficiency.  Accordingly, Cherry Hill submits that IMTL's acts or omissions were the proximate cause of the defects alleged by UI and that by

virtue of its active negligence, IMTL is liable to Cherry Hill for all expenses related to the defense of this case.

IMTL has moved to dismiss Cherry Hill's claim for indemnification against it. For the following reasons, IMTL's motion will be granted.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Common Law Indemnification**

Indemnity involves a claim for complete reimbursement based on equitable principles. Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 412 (1965). Ordinarily, there is no right of indemnity between tort-feasors. Id. However, in Kaplan, the Supreme Court of Connecticut adopted an implied obligation of indemnity for a tortfeasor whose active negligence is primarily responsible for a plaintiff's injuries where the "out-of-pocket" defendant was

3

merely passively negligent.  Smith v. City of New Haven, 258 Conn. 56, 66 (2001).

> To assert a claim for indemnification under *Kaplan,* an out-of-pocket defendant must show that: (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the [] resulting injuries []; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent.

Smith, 258 Conn. at 66.

IMTL has moved to dismiss Cherry Hill's claim for common law indemnification for failure to state a claim.  Specifically, IMTL submits that Cherry Hill cannot plead that the damages alleged by the plaintiff were the direct, immediate result of IMTL's active negligence, and that Cherry Hill was only passively negligent.  IMTL further contends that Cherry Hill cannot plead that IMTL was in exclusive control of the site work to the exclusion of Cherry Hill.

Cherry Hill argues that "[a]lthough the Third Count of the Fourth-Party Complaint does not explicitly allege that Cherry Hill's negligence was merely passive, there is no requirement that any such 'magic language' be pleaded nor should the Court require such a formulaic recitation of the elements of a cause of action."  Moreover, Cherry Hill contends that "[i]mplicit in these allegations is that it was IMTL's active negligence in overseeing, inspecting and approving Cherry Hill's work, and not any passive negligence on the part of Cherry Hill (which is denied), that was the immediate cause of the situation giving rise to UI/Whiting-Turner's alleged injuries that resulted."

IMTL replies that Cherry Hill admits it was the site contractor for the Project and performed site work in connection with the Project.  Therefore, IMTL submits that, if the site work was improperly performed as alleged by UI in its complaint, Cherry Hill, as the entity which actually performed the work, was actively negligent.  Moreover, Cherry Hill cannot credibly argue that it was merely passively negligent with respect to the site work that it performed (nor has Cherry Hill made such allegation).  Connecticut courts have so held in analogous situations:

> In the court's opinion, the plaintiff in the present case has not alleged any facts that could reasonably support the necessary predicate that the plaintiff's production of the structural plans constituted only "passive" negligence, whereas the defendants' review of those plans for code compliance constituted "active" negligence. Indeed, in this regard, the court agrees generally with the defendants that, if their review of the plaintiff's plans failed to detect areas of code noncompliance, then it goes without saying that the plans were negligently prepared by the plaintiff in the first instance.

Michael Horton Associates, Inc. v. Calabrese & Kuncas, P.C., 2012 WL 1089964, at * 3 (Conn. Super. Mar. 8, 2012); see also O & G Industries, Inc. v. Aon Risk Services Northeast, Inc., 2013 WL 4737342 at * 5 (D. Conn. Aug. 30, 2013) ("if [third-party defendant's] failure to supervise constitutes 'active' negligence, the underlying action it failed to supervise—*i.e.*, [third-party plaintiff's] procurement of the insurance policy—must also constitute 'active' negligence.").

Similarly, in the instant case, IMTL contends that if it was negligent in failing to detect deficiencies in Cherry Hill's work, as Cherry Hill has alleged, then it goes without saying that Cherry Hill, as the site work contractor, was actively negligent in procuring and installing deficient fill in the first instance.  The court

5

finds Cherry Hill's attempts to distinguish its allegations from those in <u>Horton</u> unpersuasive. Indeed, the Superior Court in <u>Horton</u> determined that:

> Absent any such factual allegations that could reasonably support the conclusion that the plaintiff's negligence in preparing the plans was merely passive, and was wholly superseded by the defendants' active negligence in reviewing them, the complaint, as pled, is legally insufficient to support a claim for common-law indemnification. The defendant's motion to strike must therefore be granted.

<u>Horton</u>, 2012 WL 1089964, at *3. In the instant case, Cherry Hill has not pleaded factual allegations that could reasonably support its assertion that its alleged negligence in preparing and installing "substandard fill" and "an inadequate drainage layer" for the parking lots and driveways was merely passive.

Pursuant to similar reasoning, IMTL argues that Cherry Hill cannot allege facts sufficient to satisfy the exclusive control element of a claim for common law indemnification. Indeed, to maintain a common law action for indemnity, the facts alleged must establish that the third-party defendants were in control of the situation to the exclusion of third-party plaintiffs. <u>Skuzinski v. Bouchard Fuels, Inc.</u>, 240 Conn. 694, 703 (1997). The "situation" is best understood as the condition that exposed a plaintiff to risk of harm, rather than the negligent acts that caused the condition. <u>Pellecchia v. Connecticut Light and Power Co.</u>, 139 Conn. App. 767, 775 (2012); <u>McAuliffe v. Costello Industries, Inc.</u>, 2016 WL 6603568, at *3 (Conn. Super. Oct. 6, 2016). Moreover:

> It is established that an allegation of exclusive control in a third party complaint for indemnification must be construed as against the allegations of the original plaintiff's complaint because it is the grounds alleged in the original complaint which will be the basis for holding the party seeking indemnity liable to the original plaintiff.

Gordon v. O'Neall Const., LLC, 2009 WL 2230876, at *3 (Conn. Super. May 27, 2009) (internal quotation omitted). In the instant case, the situation or condition at issue is the allegedly incomplete and defective site work, including, but not limited to, allegations that Cherry Hill installed "substandard fill" and "an inadequate drainage layer" for the parking lots and driveways, in breach of its subcontract. It is simply not plausible that IMTL was in control *to the exclusion of Cherry Hill* of the site work that Cherry Hill itself performed. Once again, Horton is instructive and not distinguishable:

> The fact that the defendants reviewed these "very plans" does *not* mean that the defendants controlled them or their use to the exclusion of the plaintiff—that is, to the exclusion of the party that actually prepared them.

Horton, 2012 WL 1089964, at n.4; see also Skuzinski 240 Conn. at 705 ("We conclude that, under the factual scenario alleged in [third party plaintiff's] third party complaint, no reasonable juror could find that the third party defendants had exclusive control over the situation."). In the instant case, third-party plaintiff Whiting Turner's complaint against Cherry Hill alleges that under the subcontract, Cherry Hill "represents and warrants that it is an expert in the particular line or lines of work herein contracted to be done and that it is competent to know whether the materials, methods and apparatus specified for this work are sufficient and suitable to secure the results contemplated by the Contract Documents." Moreover, Cherry Hill "warrants its workmanship and materials furnished against any defects, faults of damages." Considering that Cherry Hill's own fourth-party complaint acknowledges that it is a "site development corporation" that "entered into an agreement with Whiting-Turner

7

to provide certain site work in connection with The United Illuminating Central Facility Project," Cherry Hill has not pleaded factual allegations that could reasonably support its assertion that IMTL was in control of the situation *to the exclusion of Cherry Hill* and that IMTL's negligence *alone* was the immediate cause of the injury.  See Skuzinski, 240 Conn. at 697.

## CONCLUSION

For the foregoing reasons, IMTL's motion to dismiss Cherry Hill's claim for common law indemnification is GRANTED.

Dated this 3rd day of June, 2019, at Bridgeport, Connecticut.

       /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE