UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
UNITED ILLUMINATING CO.          :          3: 18 CV 327 (RNC)
:
v.                               :
:
WHITING-TURNER CONTRACTING       :          DATE: DEC. 18, 2020
CO ET AL                         :
:
---------------------------------------------------------x

RULING ON MOTION FOR RECONSIDERATION

I.  BACKGROUND

On November 19, 2020, following briefing, extensive oral argument, and supplemental briefing in a Joint Status Report, this Court issued an eight-page Order on Discovery addressing six categories of discovery, including, *inter alia*, document production from Paul Rossi relevant to the Central Facility Project issues in this lawsuit. (Doc. No. 274; *see* Doc. Nos. 259-62, 267, 270, 272-73). Specifically, Whiting-Turner requested that United Illuminating produce documents related to an email from October 2015 regarding an employee planning to work with Mr. Rossi to gather information for consultant CRTKL, who had been hired to investigate deficiencies with the Central Facility Project. (Doc. No. 274 at 6-7). After consideration of the parties' arguments, including United Illuminating's representation that it had produced copies of the audit reports and the documents from CRTKL, and that the "audit records maintained by Mr. Rossi are not relevant as they deal with the financing process[,]" the Court held, "To the extent that United Illuminating has produced communications with CRTKL, and that CRTKL was subpoenaed and produced 17,000 documents, Whiting-Turner's additional request is denied." (*Id*. at 7). Whiting-Turner now challenges United Illuminating's representation regarding the audit records maintained by Mr. Rossi.

II.     MOTION FOR RECONSIDERATION

Six days after the Court issued this Order, Whiting-Turner filed the pending Motion for Reconsideration seeking reconsideration and clarification regarding the production of internal audit documents maintained by Mr. Rossi. (Doc. No. 275; *see also* Doc. No. 276 & Exs.). Whiting-Turner argues that it obtained "new data . . during the November 16 deposition of Paul Rossi" that contradicts United Illuminating's representations that the audits dealt with financing and thus, were not relevant. (Doc. No. 275 at 1-2 (emphasis omitted)). According to Whiting-Turner, Mr. Rossi testified that the internal audits were not confined to internal financial audits, but also included "operational-type audits" which is relevant and discoverable information. (Doc. No. 276-1 at 23). Whiting-Turner seeks an order that United Illuminating produce paper and electronic documents "relating to the Central Facility and the issues in this litigation, including duct bank and paving, which have not been previously produced." (Doc. No. 276 at 1).

A.      LEGAL STANDARD

The standard for a motion for reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Such motions "shall not be routinely filed" and "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. R. Civ. P. 7(c)(1). "The major grounds for justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation marks omitted). The court should only grant reconsideration "when the 'moving party can point to controlling decisions or data that the court overlooked' and 'that might reasonably be expected to alter the conclusion reached by the court.'" *Doe v. Winchester Bd. of Educ.*, No. 10-CV-1179, 2017 WL 662898, at *2 (D. Conn.

Feb. 17, 2017) (quoting *Shrader*, 70 F.3d at 256-57). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners*, 684 F.3d 36, 52 (2d Cir. 2012) (citation and internal quotations omitted).

### B.   EXISTENCE OF NEW INFORMATION

As an initial matter, United Illuminating argues that Whiting-Turner failed to meet and confer prior to filing this motion. Both sides acknowledge that Whiting-Turner presented United Illuminating with a letter on November 18, 2020, and both sides also acknowledge that United Illuminating did not respond to that letter prior to Whiting-Turner's filing deadline, and in fact, did not respond until 7:00 p.m. on the eve of filing its own response. (*See* Doc. No. 281, Ex. A). The Court has repeatedly directed the parties to work together, meet and confer, and resolve issues on their own before resorting to Court intervention. These directions notwithstanding, the parties continue to resort to further motion practice.

Turning to the substance of this motion, although Whiting-Turner discusses six categories of documents that "Mr. Rossi identified . . . which have not been produced by [United Illuminating]," Whiting-Turner limits its request for reconsideration to the production of internal audit documents maintained by Mr. Rossi. Specifically, Whiting-Turner seeks an order that United Illuminating produce Mr. Rossi's internal audit documents "relating to the Central Facility [Project] and the issues in this litigation, including the duct bank and paving, which have not previously been produced."[1] (Doc. No. 275 at 1; Doc. Nos. 276, 282). In response, United

---

[1] In response to Whiting-Turner's motion, United Illuminating addressed these six categories of documents. Whiting-Turner then filed a motion for leave to file a reply explaining that it seeks "one category of documents – 'internal audit documents maintained by Mr. Rossi/internal audit relevant to the Central Facility Project issues in this lawsuit[]' . . . referenced as item No. 1 on pages 5-6 of [United Illuminating's] response." (Doc. No. 282 at 4). Whiting-Turner's clarification is necessary, not just for United Illuminating, but for the Court. Accordingly, Whiting-Turner's Motion for Permission to File Reply to Clarify the Scope of Whiting-Turner's Motion for Reconsideration (Doc. 282) is GRANTED and the Court considers the arguments made therein. As to the remaining categories identified in Whiting-

3

Illuminating argues that Mr. Rossi's testimony was consistent with United Illuminating's statements to the Court, and the exhibits Whiting-Turner cited are further evidence that United Illuminating produced all responsive documents. (Doc. No. 281).

After a thorough review of the transcript, the Court concludes that Mr. Rossi's deposition testimony did not yield "new information" unknown to the Court at the time it issued its Order. In the Joint Status Report, United Illuminating stated:

> The audit records maintained by Mr. Rossi are not relevant as they deal with the financing process for the Central Facility Project, an issue which is not in dispute. Despite that, UI has already produced copies of the audit reports for the Central Facility Project.

(Doc. No. 273 at 9).

Mr. Rossi's testimony confirmed that the audits dealt with the financial process which included some oversight of the project management as it related to the costs incurred. Whiting-Turner is reading more into Mr. Rossi's testimony than the transcript reflects. Mr. Rossi did not testify that the internal audits for this Central Facility Project were internal financial audits *and* "operational-type audits." (Doc. No. 276-1 at 2-3). Rather, he testified generally that internal audits operate both as financial audits and "operational-type audits" but he did not specify that the Central Facility Project involved both sorts of audits. (*Id.*). The Court agrees with United Illuminating that this testimony is irrelevant if the "operational-type audits" did not apply to the audit for the Central Facility Project.

Moreover, and notably, the substance of Mr. Rossi's testimony confirms that the audit process involved oversight of project management *as it related* to the financial aspects of the

---

Turner's motion, Whiting-Turner represents that it "intends to pursue [those documents] and other open discovery issues following a good faith meet and confer with [United Illuminating]." (Doc. No. 282 at 6). The parties are directed to meet and confer to resolve the outstanding issues with the remaining categories of documents identified by Whiting-Turner and are strongly discouraged from resorting to further motion practice. (*See* Doc. No. 276 at 4-6).

project. When asked if he would have had involvement in planning for the central facility, Mr. Rossi testified that "our process of auditing would not have changed[,]" the internal audits would have been involved in "monitoring . . . costs, making sure that from a process perspective the expenses and costs were being signed off by the appropriate manager or managers of that project." (Doc. No. 276-1 at 7). Mr. Rossi identified who performed the audits (*id.* at 8), and when asked to review an email that referred to a draft audit report, Mr. Rossi explained that the purpose of the document was to look at the expenses of the project, consider what was being spent, make sure that "spending [was not] over . . . [the] board-approved amount[,]" and "ensur[e] that the costs . . . incurred for that central facility were appropriate[.]" (*Id.* at 9-1). Additionally, Mr. Rossi explained that they ensured that the costs "were being approved; they were properly recorded in the general ledger of the company and that those costs were being attributed directly into that account specific and only for central facility costs." (*Id.*). His testimony confirms that, to the extent that the audit process involved project management oversight, it did so only as it related to the financial aspects of the project.

He explained that his group would have conversations with "various project managers on the central facility plan[,]" look at the "process of how [they were] managing that project[,]" which included "managing the cost aspects of it, managing the construction aspects of it, everything that goes along with project management." (*Id.* at 12). When asked what his group would have done to gain assurance that the project was "adequately planned for successful execution[,]" Mr. Rossi testified that they would "meet and have discussions with the project manager, maybe some of the engineers[, asking] how do you plan to work, how do you schedule things, how to you ensure everything is done as scheduled[.]" (*Id.* at 14-15). This testimony does not reflect that Mr. Rossi had discussions about the alleged paving deficiencies, but rather, that Mr. Rossi engaged in these

conversations to trace the payments that were made and to track the costs of the project. (*Id.* at 24-25). He explained that, "as money was being spent in the construction of the central facility, [they] did periodic reviews of those costs, monitoring those costs, making sure that from a process perspective the expenses and the costs were being signed off by the appropriate managers[.]" (*Id.* at 7). As he described it, they were "look[ing] at the budget from the beginning to the end of the period[.]" (*Id.* at 32).

There is no new evidence that the internal audit documents maintained by Mr. Rossi are relevant to the Central Facility Project issues in this lawsuit. As the Court reads Mr. Rossi's testimony, the internal audit records he maintained dealt with the financing process for the project, just as United Illuminating represented in the Joint Status Report which this Court relied on in reaching its decision in the underlying Order. Accordingly, Whiting-Turner's Motion for Reconsideration is granted to the extent that the Court has considered Mr. Rossi's November 16, 2020 deposition testimony. After thorough consideration of Mr. Rossi's deposition testimony, the Court concludes that such evidence is not new. Accordingly, the Court adheres to its previous conclusion.

III. CONCLUSION

For the reasons set forth above, Whiting-Turner's Motion for Reconsideration (Doc. No. 275) is granted to the extent that the Court has considered Mr. Rossi's November 16, 2020 deposition testimony. After thorough consideration of Mr. Rossi's deposition testimony, the Court concludes that such evidence is not new. Accordingly, the Court adheres to its previous conclusion.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and

D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 18th day of December, 2020.

                                                __/s/ Robert M. Spector, USMJ_____
                                                Robert M. Spector
                                                United States Magistrate Judge